**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **PAULINE BRAXTON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CHRISTOPHER T. HANSON,[1] *Chair of The Nuclear Regulatory Commission*,**<br><br>**Defendant.** | **CIVIL ACTION FILE**<br><br>**NO. 1:20-cv-01126-AJB** |

**ORDER AND OPINION[2]**

In this action, Plaintiff Pauline Braxton ("Braxton" or Plaintiff) asserts claims against her former employer, Defendant Kristine l. Svinicki, Chairman of the Nuclear Regulatory Commission ("NRC" or Defendant), for retaliatory

---

1 When Plaintiff filed her complaint, Kristine L. Svinicki was Chair of the Nuclear Regulatory Commission. Christopher T. Hanson was designated Chair of the Nuclear Regulatory Commission by the President, effective January 20, 2021. Under the Federal Rules of Civil Procedure, Hanson "is automatically substituted as a party." Fed. R. Civ. P. 25(d).

2 The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. [*See* Doc. 28]. Therefore, this Order constitutes a final Order of the Court.

harassment causing a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* [Doc. 20]. This matter is presently before the Court on Defendant's motion for summary judgment. [Doc. 43]. For the reasons set forth below, the motion is **GRANTED**.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party may also meet its burden by pointing out that there is an absence of evidence to support an element of the case on which the nonmoving party bears the burden of proof. *Celotex*, 477 U.S. at 325. "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The Court must view the evidence and factual inferences in the light most favorable to the nonmoving party. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). And, to the extent that material facts are genuinely in dispute, the Court must resolve the disputes in the nonmovant's favor. *See Vaughan v. Cox*, 343 F.3d 1323, 1326 n.1 (11th Cir. 2003).

However, "[t]he mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. Additionally, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the

evidence presented." *Anderson*, 477 U.S. at 252; *accord EPL, Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999). "If the record presents disputed issues of fact, the court may not decide them; rather, it must deny the motion and proceed to trial." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001)). A plaintiff may not defeat a summary judgment motion by presenting contentions based on "mere speculation and conjecture." *Cincinnati Ins. Co. v. Metro. Props., Inc.*, 806 F.2d 1541, 1544 (11th Cir. 1986).

## II. BACKGROUND[3]

### A. Facts[4]

At all times relevant, Braxton was a Resident Inspector for Region II of the NRC in the Division of Construction Oversight ("DCO"). [D ¶ 1].[5] On July 15,

---

[3] The page citations to exhibits referenced within this section refer to the electronic PDF pagination, and not to any authored pagination within the documents themselves.

[4] In general, the facts considered in this Order and Opinion are limited to those deemed by the parties to be relevant to the Court's adjudication of the pending motion for summary judgment, [Doc. 43-1 (Def.'s Br.); Doc. 45-8 (Pl.'s Resp. Br.); and Doc. 50 (Def.'s Reply Br.)]. *See Mendenhall v. Blackmun*, 456 Fed. Appx. 849, 852 (11th Cir. Feb. 6, 2012) (finding it within the district court's discretion to limit its review to the specific portions of the exhibits expressly cited by the parties in their pleadings). However, while the Court "need consider only the cited materials," it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The facts recited in this section are intended to establish the context of the case. Additional facts will also be recited in the discussion section in the text.

[5] Citations that reference only paragraph numbers preceded by "D" refer to Defendant's statement of material facts, or portions thereof, that are not disputed, [Doc. 43-2], and citations that reference only paragraph numbers preceded by "P" refer to Plaintiff's statement of material facts, or portions thereof, that are not disputed, [Doc. 45-6]. Each of the proponent's facts will be deemed admitted pursuant to the Local Rules of the Court unless the respondent "(i) directly refutes the [proponent's] fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the [proponent's] fact; or (iii) points out that the [proponent's] citation does not support the [proponent's] fact or that the [proponent's] fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1B(1)." LR 56.1B(2), (3), NDGa. Where a factual assertion or portion thereof is properly disputed, the Court will cite to the paragraph appearing in the

2015, Plaintiff was assigned to the Vogtle 3 & 4 site, where her supervisor was Brian Kemker, Senior Resident Inspector. [D ¶¶ 2-3]. Jamie Heisserer was the Chief of the DCO and was Plaintiff's second-level supervisor from October 1, 2016, until June 2, 2018, when Plaintiff transferred to another division. [D ¶ 4]. Kemker described Plaintiff's work relationship with him and her coworkers as "difficult," stating that "she generally was not willing to work collaboratively and collegially with other staff" in the office. [D ¶ 6; Doc. 44-3 at 9]. Plaintiff described her work relationship with Kemker as a "disaster." [D ¶ 7; Doc. 45-7 ¶ 7].

On November 1, 2017, Plaintiff missed a short team meeting, and Kemker met with Plaintiff to discuss that incident. [D ¶ 8; Doc. 45-7 ¶ 8]. The conversation escalated and turned contentious, resulting in a counseling memorandum being placed in Plaintiff's file, although it was not considered a disciplinary action. [D ¶¶ 8-9; Doc. 45-7 ¶¶ 8; Doc. 44-5 at 22-23 ("2017 counseling memorandum")]. Plaintiff then took medical leave for most of December 2017 until January 16, 2018. [D ¶ 11; Doc. 45-7 ¶ 11]. Kemker noted that Plaintiff physically worked on two inspections, both in January 2018, while assigned to the Vogtle 3 & 4 site during

---

proponent's statement of material fact; will, as stated above, view the material evidence and factual inferences in the light most favorable to Plaintiff; and, where appropriate, will also cite directly to the evidence supporting the Court's resulting factual recitation.

the rating period from October 1, 2017, to February 2, 2018. [D ¶ 12; Doc. 44-5 at 12; Doc. 44-10 at 6; Doc. 45-3 at 4-8 (referencing "Wall L" and "Wall 5" inspections)]. In February 2018, Plaintiff began working for Marvin Sykes in the Division of Reactor Safety ("DRS") on a detail assignment. [D ¶ 13; Doc. 45-3 at 3; Doc. 45-7 ¶ 13]. Heisserer emailed Plaintiff on February 9, 2018, and March 8, 2018, requesting the status of the two reports for inspections Plaintiff had completed in January 2018. [D ¶ 14; Doc. 45-3 at 6-7; Doc. 45-7 ¶ 14]. Plaintiff responded to the first email on February 12th, and to the second on March 9th, but did not provide Heisserer an estimate of when the reports might be completed or state that she was waiting on any test results until Heisserer sent a third email, also on March 9th. [Doc. 45-3 at 6-7]. Plaintiff submitted the two reports on March 15, 2018, after awaiting results of a 56-day test as to one of the inspections, and some revisions were thereafter necessary. [D ¶ 15; Doc. 44-4 ¶ 6; Doc. 44-10 at 7-8].

During Plaintiff's mid-year performance appraisal in April 2018, Kemker read his comments to Plaintiff regarding the five critical elements and standards addressed by that appraisal, which covered the four-month period that Plaintiff spent working under his supervision from October 2017 to February 2018. [D ¶ 17; Doc. 45-7 ¶ 17; Doc. 44-2 ¶ 6]. On that appraisal, Plaintiff met the standards for critical elements 1, 2, and 5 as to the four-month period that Kemker rated her, but

there was not enough information to rate her as to critical element 4 and improvement was needed to meet the standard for critical element 3. [D ¶ 18; Doc. 44-4 ¶ 8]. Critical element 3 concerned Plaintiff's oral and written communication skills. [D ¶ 19; Doc. 45-7 ¶ 19]. Plaintiff offered no input or comments at that time and indicated that she understood the ratings she was given. [D ¶¶ 20-21; Doc. 45-7 ¶¶ 20-21].

On May 1, 2018, Plaintiff filed a formal complaint with the NRC alleging harassment based on her race and gender, and on reprisal. [D ¶ 22; Doc. 44-8 at 3 ("2018 EEO Complaint")]. In that complaint, Plaintiff alleged 20 specific claims of discrimination against individuals in her management chain as well as her colleagues and complained about issues involving her 2015 and 2016 performance appraisals, among other issues. [D ¶ 23]. Plaintiff settled this complaint later that same month and agreed to withdraw it. [D ¶ 24 ("2018 EEO Settlement")]. As relevant, a condition of the settlement agreement was that the NRC would remove any reference to the 2017 counseling memorandum from Plaintiff's personnel file, although Kemker and Heisserer were not aware of that condition. [D ¶ 57; Doc. 44-1 at 9-10, 42-43, 45-46, 48, 50-51]. As another condition of the settlement, Plaintiff agreed to waive any claims against the NRC and its employees prior to her execution of that agreement on May 30, 2018. [Doc. 44-1 at 9-13].

In June 2018, Plaintiff was permanently reassigned to the Engineering Branch of the DRS as a Reactor Inspector, where she is currently employed. [D ¶ 25]. At some point after the 2018 EEO settlement, Plaintiff was told not to communicate directly with Kemker and Heisserer and to instead direct all communications through Sykes, although this prohibition was not part of the 2018 EEO settlement itself. [P ¶ 1; Doc. 44-1 at 9-13; Doc. 51 ¶ 1].

Although appraisals were typically based on a 12-month period, Plaintiff's transfer from DCO to DRS effectively shortened her 2018 appraisal period to only eight months, from October 2017 to June 2018. [D ¶ 26]. Thus, the DCO had a limited number of inspection activities that it could document in Plaintiff's 2018 performance appraisal. [D ¶ 29; Doc. 44-7 ¶ 29]. Plaintiff testified that Gloria Reeves, Human Resources Manager, asked if she would formally state that she requested Sykes to complete her 2018 performance appraisal rather than Kemker and Heisserer, and also asked Plaintiff if she would state that she was made aware of the elements and standards applicable to her for performance appraisal purposes in February 2018, rather than June 2018 when she actually received them.

[P ¶¶ 18-19; Doc. 45-1 ¶¶ 7-8].[6] Plaintiff refused to backdate her personnel standards. [Doc. 45-1 ¶ 9].

Heisserer initially indicated, based on Human Resources guidance, that the DCO did not have primary responsibility for drafting Plaintiff's 2018 performance appraisal, but stated that if the DCO were to write it, it would require input from the DRS. [D ¶¶ 33-35; Doc. 44-4 ¶ 15; Doc. 45-7 ¶¶ 33-35]. Heisserer thus sought input from the DRS to rate Plaintiff for the portion of the performance period that she worked in that division. [D ¶ 30; Doc. 44-5 at 57-58]. Between June 2018 and October 2018, Heisserer sought input from Sykes for Plaintiff's performance appraisal in order to adequately rate her for her performance between February 2018 and June 2018, since Plaintiff no longer worked with Heisserer or Kemker at that time. [D ¶ 31; Doc. 44-5 at 53, 57-58; Doc. 44-4 ¶¶ 9-10]. As a result of receiving Sykes's input, Plaintiff's rating was raised on certain critical elements.

---

[6] The undersigned notes that Defendant objects to the Court's reliance on the facts Plaintiff asserts in paragraphs 18 and 19 of her statement of material facts on the grounds that they are based on inadmissible hearsay. [*See* Doc. 51 ¶¶ 18-19]. The Court agrees but includes these facts for context to Plaintiff's arguments not for the truth of the matter asserted, but only for the proposition that Plaintiff testified that Reeves made these requests. Thus, Defendant's objections to the Court's reliance on these paragraphs for the truth of the matter asserted are **SUSTAINED**, as Plaintiff has presented no evidence, other than her own testimony, that Reeves in fact made these requests.

[D ¶¶ 32, 39; Doc. 44-5 at 59; Doc. 45-7 ¶ 39]. Plaintiff timely received her 2018 performance appraisal on October 21, 2018, at the end of the fiscal year. [D ¶ 40].

In Plaintiff's 2018 performance appraisal, as to critical element 3, which concerned oral and written communication skills, Kemker commented:

> As the Vogtle 3 and 4 Resident Inspector, she was responsible for providing input to the quarterly integrated inspection report. Her two inputs to the inspection report were not submitted on schedule, did not accurately characterize the scope of the inspection, and required significant revisions.

[D ¶ 41; Doc. 44-7 at 7-8; Doc. 45-7 ¶ 41 ("Comment 1")]. As to that comment, Plaintiff admitted that her inputs required revisions, but explained that it was due to a new report format being introduced while she was out on medical leave, as well as missing training covering the new format during her leave. [D ¶ 42; P ¶ 9; Doc. 45-7 ¶ 42; Doc. 44-6 at 57-58]. Plaintiff filed a grievance concerning her 2018 performance appraisal and, in the Step A decision on that grievance, Kemker noted that the expectation for timely submission of inspection report inputs was documented in the Desktop Guide for construction inspectors, which stated that inspectors were expected to document their results within one week of returning to the office after an inspection. [D ¶¶ 44-47, 55; Doc. 44-10 at 7-8; Doc. 45-7 ¶¶ 44-47, 55]. Kemker issued the Step A decision on January 31, 2019, denying the entirety of Plaintiff's allegations and determining that they lacked merit.

[D ¶ 56; Doc. 44-10]. Nonetheless, Plaintiff still received a rating of "fully successful" as to critical element 3. [D ¶ 49; Doc. 44-10 at 7; Doc. 45-7 ¶ 49].

Also as to critical element 3, Kemker commented that:

> During the review/revision process, [Plaintiff's] response to written requests, questions, and feedback from the Senior Resident Inspector and Senior Construction Project Manager related to her inputs were dismissive and uncooperative.

[D ¶ 50; Doc. 44-7 at 8; Doc. 45-7 ¶ 50 ("Comment 2")]. Plaintiff initially disputed the comment but later agreed during her deposition that their perspective as to her responses was a matter open to interpretation, although she testified that her responses were due to her being unaware that a new format was in use for the reports. [D ¶ 51; P ¶ 14; Doc. 44-6 at 62-66; Doc. 45-7 ¶ 51]. Kemker additionally commented as to critical element 3 that:

> [A]t the Vogtle 3 & 4 Resident Inspector's Office, her interactions and discussions with peers and supervision were often defensive and occasionally contentious.

[D ¶ 53; Doc. 44-7 at 8; Doc. 45-7 ¶ 53 ("Comment 3")]. Plaintiff disputed this comment as well but testified that she had had adverse interactions with Kemker in her office while stationed at the Vogtle 3 & 4 site. [D ¶ 54; Doc. 44-6 at 66-67; Doc. 45-7 ¶ 54]. Although Kemker's comment was made in reference to the 2017 counseling memorandum, Heisserer indicated that it was not the only incident prompting Kemker, with her approval, to make Comment 3 as to critical element 3.

[D ¶¶ 58, 64; Doc. 44-1 at 48-49; Doc. 45-7 ¶ 64]. At some point, the NRC acknowledged that a breach of the 2018 EEO settlement occurred as a result of the references to the 2017 counseling memorandum in Plaintiff's 2018 performance appraisal, and it directed the removal of all references to the November 2017 incident and resulting counseling memorandum from Kemker's response to the Step A decision. [D ¶ 63; Doc. 45-7 ¶ 63]. Plaintiff did not have any further interactions with Kemker and Heisserer after October 30, 2018, when the 2018 fiscal year ended. [D ¶ 65].

**B. Procedural History**

Plaintiff filed this action in this Court on March 11, 2020. [Doc. 1]. Defendant moved to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) on August 7, 2020, [Doc. 16 at 1], and on August 10, 2020, the Court entered a report and recommendation ("R&R") recommending dismissing the complaint under Fed. R. Civ. P. 4(m) for failure to effect service of process on the defendant. [Doc. 17 at 6]. The Court then entered an order vacating that R&R on August 12, 2020, based on Defendant's appearance via the filing of its motion to dismiss. [Doc. 19]. Plaintiff filed an amended complaint on August 21, 2020, [Doc. 20], and Defendant withdrew its motion to dismiss and filed an answer to the amended

complaint on September 4, 2020. [Docs. 23, 24]. On October 5, 2020, the parties consented to the jurisdiction of the undersigned Magistrate Judge. [Doc. 28].

Following the close of discovery, Defendant filed the pending motion for summary judgment on March 15, 2021. [Doc. 43; Doc. 43-1 (Def.'s Br.); Doc. 43-2 (Def.'s Statement of Undisputed Mat. Facts)]. Plaintiff filed a response in opposition to the motion, [Doc. 45-8 (Pl.'s Resp. Br.); Doc. 45-6 (Pl.'s Statement of Mat. Facts)]; Doc. 45-7 (Pl.'s Resp. to Def.'s Statement of Undisputed Mat. Facts)], and Defendant filed a reply in support of the motion, [Doc. 50], and a response to Plaintiff's statement of material facts, [Doc. 51 (Def.'s Resp. to Pl.'s Statement of Mat. Facts)]. The parties did not request oral argument. [*See* Dkt.]. With briefing complete, the Court now considers the motion.

## III. LEGAL FRAMEWORK

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under the anti-retaliation clause of Title VII, it is an unlawful employment practice for an employer to, *inter alia*, discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter."

42 U.S.C. § 2000e-3(a). When a party relies on circumstantial evidence to prove her case of discrimination, as Plaintiff does in the instant case, courts typically employ the familiar burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). In determining whether an employer has retaliated against an employee for engaging in protected activity, the Court likewise applies the *McDonnell-Douglas* analytical framework. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802*; St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). Where a plaintiff was not terminated from her position, she may nonetheless demonstrate a *prima facie* case of retaliation, i.e., a retaliatory hostile work environment, by showing that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination; and (3) some causal relationship existed between the two events. *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1205-08 (11th Cir. 2021); *Monoghan v. Worldpay US, Inc.*, 955 F.3d 855, 861-62 (11th Cir. 2020); *see also Malone v. U.S. Att'y Gen.*,

858 Fed. Appx. 296, 303 (11th Cir. May 26, 2021). Claims of retaliatory hostile work environment are considered an offshoot of retaliation claims. *See Babb*, 992 F.3d at 1207.

If a plaintiff establishes a prima facie case, she has created an inference of discrimination, and the defendant has the burden of articulating a legitimate, non-retaliatory reason for its employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). This burden is "exceedingly light." *Meeks v. Comput. Assocs. Int'l.*, 15 F.3d 1013, 1019 (11th Cir. 1994). "[T]he defendant must merely proffer non-[retaliatory] reasons, not prove them." *Id.* That is, the employer must only introduce admissible evidence to support the challenged employment actions. *Tx. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254-55 (1981). If the defendant meets this light burden, then the inference of discrimination is erased, and the burden shifts back to the plaintiff "to demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* at 256. To survive summary judgment, the plaintiff must prove both that the employer's proffered reason is not worthy of credence and that the employer was motivated by intentional discrimination. *See Meeks*, 15 F.3d at 1019 n.1 (citing *Hicks*, 509 U.S. at 511). To this end, it is not the Court's role to second-guess an employer's business decisions and the wisdom of those decisions is irrelevant, so

long as they were not made with a discriminatory motive. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

## IV. ARGUMENTS OF THE PARTIES

Plaintiff asserts in her amended complaint that she filed her 2018 EEO complaint against Defendant alleging harassment based on her race, gender, and fear of reprisal, which constituted protected activity. [Doc. 20 ¶ 38]. She alleges that she also engaged in protected activity by refusing to backdate her personnel standards and that these actions exemplify a retaliatory hostile work environment. [*Id.* ¶¶ 39-40]. Plaintiff alleges that Defendant retaliated against her for engaging in this protected activity by making false statements about her to others, entering a false and defamatory performance appraisal that improperly mentioned the settlement of her 2018 EEO complaint, and by "downgrad[ing]" her. [*Id.* ¶¶ 19-20, 25-27, 29, 31-32, 34-37].

In its brief in support of its motion for summary judgment, Defendant first argues that although Plaintiff engaged in protected activity by filing her 2018 EEO complaint, she cannot show that she was subjected to unwelcome harassment or that any alleged harassment was sufficiently severe and pervasive such that it

altered the conditions of her employment, and she further cannot show that her protected activity was a "but for" cause of the alleged harassment. [Doc. 43-1 at 6, 9-10].[7] Specifically, Defendant asserts that even if Plaintiff subjectively perceived a retaliatory hostile work environment, the evidence shows that Kemker and Heisserer took legitimate, non-retaliatory actions to ensure she received a full and fair appraisal for 2018. [*Id.* at 7]. Defendant also contends that, even by Plaintiff's own allegations, the allegedly false statements were made only on three occasions, which fails to establish that any alleged harassment was sufficiently frequent. [*Id.* at 8-9]. And, Defendant notes, Plaintiff complains of only one incident each of failing to remove the 2017 counseling memorandum from her personnel file, and of Reeves's request that she backdate her personnel standards. [*Id.* at 8 n.4].

Next, Defendant argues that, as to the alleged false statements, the evidence shows that, between June and October 2018, Heisserer sought input from other NRC officials on Plaintiff's performance during an 8-month period of 2018 when she did not work for Heisserer, input which ultimately resulted in a higher appraisal

---

[7] Defendant's motion for summary judgment and brief in support thereof were filed prior to the Eleventh Circuit's decision in *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193 (11th Cir. 2021), as noted in Defendant's reply brief, in which the Eleventh Circuit determined that the severe and pervasive standard does not apply to claims of a retaliatory hostile work environment. [*See* Doc. 50 at 2-4]; *Babb*, 992 F.3d at 1206-08.

score. [*Id.* at 10-11]. Defendant contends that Plaintiff also could not have felt harassed by emails Heisserer sent seeking that input because she did not receive them herself. [*Id.* at 11]. Defendant argues that, even if Plaintiff's allegations that Heisserer and Kemker tried to avoid completing her 2018 appraisal are true, such that there was a delay in completing her appraisal, it still does not demonstrate actionable harassment. [*Id.* at 12].

Defendant argues that, as to the comments in the 2018 appraisal, Plaintiff has not challenged the overall ratings she received in that appraisal and instead takes issue only with the comments as to Critical Element 3. [*Id.* at 12-13]. Defendant asserts that, with regard to Comment 1, Plaintiff admitted that her reports required revisions. [*Id.* at 13]. Defendant contends that Plaintiff also argues that the evidence showed, contrary to Plaintiff's contentions, that inspection reports were due within one week of returning from an inspection, but Plaintiff submitted the two challenged inspection reports over six weeks after the inspections were completed. [*Id.* at 14].

As to Comment 2, Defendant argues that Plaintiff admitted that whether her responses to written questions and feedback from senior NRC officials were "dismissive and uncooperative" is subject to interpretation. [*Id.* at 15-16]. And as to Comment 3, Defendant asserts that Plaintiff agreed during her deposition that

she had had adverse reactions with Kemker when stationed at the Vogtle 3 & 4 site. [*Id.* at 16]. Defendant also argues that, to the extent that Comment 3 erroneously referenced the incident addressed in the 2017 counseling memorandum, as prohibited by the 2018 EEO settlement, the 2017 counseling memorandum was not specifically mentioned in the appraisal, it did not affect her rating, and Defendant took corrective action for the reference of the memorandum in Plaintiff's 2018 appraisal. [*Id.* at 16-17]. Additionally, Defendant contends that the evidence shows that there were additional incidents warranting Comment 3 and that, although the comment may have offended Plaintiff, it was a truthful and did not constitute harassment. [*Id.* at 17].

Further, as to Plaintiff's statement that Reeves asked her to backdate her personnel standards, Defendant argues that even if true, Reeves's request would not establish severe conduct that interfered with Plaintiff's job performance because she declined the request, and the standards were not actually backdated. [*Id.* at 18]. Defendant notes that the record lacks any evidence that Reeves made such a request. [*Id.*]. Thus, Defendant argues, the totality of Plaintiff's allegations, considered under Eleventh Circuit standards, do not amount to actionable retaliatory harassment. [*Id.* at 19].

Next, Defendant argues that Plaintiff cannot show that any protected activity was the cause of the alleged harassment. [*Id.* at 19-20]. First, Defendant asserts that Plaintiff cannot show a causal connection between Kemker's and Heisserer's comments on her 2018 performance appraisal and her 2018 EEO complaint because the evidence shows that Kemker and Heisserer had no knowledge of Plaintiff's settlement of that complaint and therefore could not have relied on the 2017 counseling memorandum—which was addressed in the settlement—out of retaliation. [*Id.* at 20-21]. Second, Defendant argues that Plaintiff cannot establish temporal proximity between the 2018 EEO settlement and any of the conduct she alleges was harassing, which occurred between two and five months later. [*Id.* at 21-22]. Third, Defendant contends that Plaintiff cannot demonstrate that, absent her filing the 2018 EEO complaint, none of the alleged harassment would have occurred. [*Id.* at 22-23].

Defendant further argues that even if Plaintiff had established a prima facie case of harassment, Defendant presented legitimate, non-retaliatory reasons for taking the challenged employment decisions, as Kemker's and Heisserer's actions were taken in fulfillment of their duties as supervisors to ensure Plaintiff received a full and fair 2018 performance appraisal, as reflected by the evidentiary record. [*Id.* at 23]. Defendant also asserts that, to the extent Plaintiff raised a claim for

breach of the 2018 EEO settlement, Defendant is entitled to sovereign immunity because Title VII does not waive immunity for contractual challenges to a Title VII settlement agreement. [*Id.* at 23-24]. Finally, Defendant argues summary judgment is warranted on any claims Plaintiff has raised challenging her April 2018 mid-year review or Kemker's and Heisserer's alleged attempts between April and October 2018 to avoid completing Plaintiff's 2018 performance appraisal because, Plaintiff released all claims existing prior to the 2018 EEO settlement. [*Id.* at 24-25].

Plaintiff responds to Defendant's motion, arguing that retaliatory harassment in the workplace is not analyzed under the severe and pervasive standard and is instead actionable if it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. [Doc. 45-8 at 5 (citing *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020)]. Plaintiff asserts, on that basis, that there is a genuine issue of material fact as to whether Kemker and Heisserer referred to Plaintiff in a disparaging manner frequently enough that it "infiltrated the workplace." [*Id.*]. Plaintiff reiterates that multiple supervisors told her, based on statements Kemker and Heisserer made, that she was perceived as a troublemaker and Sykes told her that Kemker and Heisserer did not want to complete her 2018 performance appraisal. [*Id.* at 5-6]. Plaintiff also contends that

a reasonable employee would not engage in protected activity if she knew that, as a consequence, her supervisor would attempt to avoid completing her performance appraisal and would make derogatory comments about her. [*Id.*].

Additionally, Plaintiff argues that a reasonable employee would not engage in protected activity after being told that, if she did not backdate her personnel standards, she would be subjected to a lower performance appraisal rating, especially after having received the performance appraisal with false and negative comments on it. [*Id.* at 6-7]. Plaintiff asserts that there is a genuine dispute of material fact as to whether the comments in her 2018 performance appraisal were false. [*Id.* at 7]. Plaintiff disputes the factual accuracy of Comment 1, arguing that the comment was a pretext for retaliation and that she was on leave when the applicable training was held. [*Id.* at 8-9]. As to Comment 2, Plaintiff argues that the subjectivity of Kemker's and Heisserer's statement that she was dismissive and uncooperative creates a genuine issue of material fact as to whether the comments should have been included in her performance appraisal. [*Id.*]. Plaintiff also disputes the factual accuracy of Comment 3 and reiterates that the 2017 counseling memorandum should not have been referenced under the terms of the 2018 EEO settlement. [*Id.* at 9-10].

Next, Plaintiff argues that there are genuine issues of material fact as to causation and pretext. [*Id.* at 11-12]. Plaintiff contends that her performance appraisal took place less than a month after she opposed Reeves's requests and that the temporal proximity, coupled with Reeves's statement that her performance appraisal would be worse if she did not backdate the forms, evidences retaliation and causation. [*Id.* at 12, 14]. Plaintiff also asserts that her 2018 performance appraisal was the first opportunity Kemker and Heisserer had to retaliate against her based on the 2018 EEO settlement. [*Id.* at 12]. Plaintiff argues that Kemker and Heisserer were aware of the settlement because it contained an agreement that they would no longer communicate with Plaintiff directly and because Kemker stated that he was aware at the time of Plaintiff's performance appraisal that she had made "malicious" complaints against him and Heisserer. [*Id.* at 13]. Finally, Plaintiff asserts that Kemker and Heisserer listed issues in her performance appraisal without first addressing them with her, which violated policy and also evidenced causation. [*Id.* at 15].

Defendant replies, conceding that the severe and pervasive standard is inapplicable in light of the Eleventh Circuit's decision in *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193 (11th Cir. 2021), and that the new standard is whether the alleged harassment would have dissuaded a reasonable employee from

engaging in protected activity. [Doc. 50 at 2-4]. Defendant argues, however, that Plaintiff has also failed to meet this standard, first because she has not established that she was subjected to any retaliatory harassment. [*Id.* at 4]. Defendant contends that Plaintiff's repeated assertions that Kemker and Heisserer made false statements about her are supported only by Plaintiff's hearsay statements. [*Id.* at 4-5]. Further, Defendant asserts that even assuming the hearsay statements were true, and that Kemker and Heisserer were trying to avoid completing Plaintiff's 2018 performance appraisal, it still does not establish that Kemker and Heisserer had a retaliatory motive for doing so. [*Id.* at 5].

To that end, Defendant objects to Plaintiff's reliance on the statements in paragraphs 3, 7, 8, 12, and 13 of her declaration under Fed. R. Civ. P. 56(e) on the ground that they contain inadmissible hearsay. [*Id.* at 6]. Defendant also asserts that, to the extent Plaintiff relies on false statements beyond the three occasions mentioned in her EEO complaint in support of her claims—April 2019, October 2018 to present, and July 2018—those claims are unexhausted. [*Id.* at 5 n.4]. Defendant argues that the evidence instead demonstrates that Kemker and Heisserer worked diligently to complete Plaintiff's 2018 performance appraisal and that Plaintiff has not produced admissible evidence of any disparaging statements. [*Id.*]. As to her contentions regarding Reeves's alleged request that she backdate

her personnel standards, Defendant argues that Plaintiff cannot show an injury on that basis since she did not receive a poor performance appraisal rating. [*Id.* at 7].

Additionally, as to the three challenged comments in Plaintiff's 2018 performance appraisal, Defendant reiterates that Plaintiff agreed with Comment 1 and only added explanations during her deposition. [*Id.* at 7-8]. Defendant likewise reiterates that, as to Comment 2, Plaintiff admitted that Kemker and Heisserer's perception of her behavior as dismissive and uncooperative is subject to interpretation and, to the extent Plaintiff argues they should have known that she was not properly trained, Eleventh Circuit precedent prohibits courts from second-guessing an employer's business judgment. [*Id.* at 9]. Finally, as to Comment 3, Defendant reiterates that Plaintiff agreed that she had adverse interactions with Kemker while stationed at the Vogtle 3 & 4 site. [*Id.*]. Defendant contends that, as to all of the comments, Plaintiff has not demonstrated that they were false and, in any event, the did not constitute an adverse employment action. [*Id.* at 10]. Thus, Defendant argues, because the actions Plaintiff complains of would not have dissuaded a reasonable employee from engaging in protected activity, she has failed to demonstrate any harassment underlying her hostile work environment claim. [*Id.*].

Next, Defendant asserts that Plaintiff has not established that any alleged harassment was based on her entering the 2018 EEO settlement or refusing to backdate her personnel standards. [*Id.* at 11-12]. Defendant argues that, even assuming Reeves did ask her to backdate her personnel standards, her opposition is not protected by Title VII and, regardless, she did not point to any evidence that Kemker and Heisserer knew of her refusal when they completed her 2018 performance appraisal. [*Id.*]. Defendant also reiterates that Kemker and Heisserer were not aware of the 2018 EEO settlement at the time of her 2018 performance appraisal and that Plaintiff has not presented any evidence, beyond speculation, that they were aware of it. [*Id.* at 12-13]. Thus, Defendant contends, Plaintiff's only protected activity was filing her 2018 EEO complaint, but the settlement of that complaint lacks temporal proximity to the completion of her 2018 performance appraisal. [*Id.*]. Defendant notes that Plaintiff cites no authority in support of her theory that her 2018 performance appraisal was Kemker's and Heisserer's first opportunity to retaliate against her. [*Id.*].

## V. **DISCUSSION**

After careful consideration of the arguments and evidence, the undersigned concludes that Defendant's motion for summary judgment is due to be granted. As an initial matter, the Court agrees with Defendant that the challenged paragraphs

of Plaintiff's declaration—specifically, paragraphs 3, 7, 8, 12, and 13—are based on inadmissible hearsay, and Plaintiff has provided no other evidence supporting the facts she attempts to introduce through her recitations of Reeves's and Sykes's statements. [*See* Doc. 45-1 ¶¶ 3, 7-8, 12-13]; Fed. R. Civ. P. 56(e); *Macuba v. Deboer,* 193 F.3d 1316, 1322–25 (11th Cir. 1999) (district court erred by considering, on summary judgment, witness' statement about statements made to him which were offered for their truth). The Court therefore declines to consider the facts asserted in those paragraphs as evidence in support of Plaintiff's claims.[8]

Additionally, although the Court agrees with Defendant that any claims raised concerning events prior to May 2018 when Plaintiff settled her 2018 EEO complaint are unexhausted, the Court does not find that Plaintiff has raised any such claims. Plaintiff's amended complaint clearly delineates only one claim for retaliatory harassment, which is more accurately characterized as a retaliatory hostile work environment claim, and that claim centers around the preparation and presentation of Plaintiff's 2018 performance appraisal. [*See* Doc. 20 at 9]. And to the same end, the Court likewise concludes that Plaintiff has not set forth a claim for breach of the 2018 EEO settlement, and the Court therefore declines to address

---

[8] On that basis, the facts referenced in the challenged paragraphs were deliberately excluded from the Court's factual recitation above.

Defendant's arguments as to that issue. The undersigned will now address the challenges Defendant raises to Plaintiff's retaliatory hostile work environment claim in logical order.

### A. Kemker's and Heisserer's False Statements to Others and Reeves's Requests to Plaintiff

The undersigned finds that there is no evidence in the record, beyond Plaintiff's hearsay statements, supporting her contentions that Kemker and Heisserer made false statements about her to other NRC officials such that she was perceived as a troublemaker. Likewise, there is no evidence, beyond Plaintiff's hearsay statements, that Reeves asked her to state that she wanted Sykes to complete her performance review or to backdate her receipt of the applicable personnel standards for her 2018 performance appraisal. *See Celotex Corp.*, 477 U.S. at 323-325 (noting that the moving party may meet its summary judgment burden by pointing to an absence of evidence supporting an element of the case, and that the non-moving party must then present competent evidence demonstrating specific facts that show a genuine issue for trial). These two incidents of alleged harassment rely largely on the challenged portions of Plaintiff's declaration that the Court has declined to consider. And Plaintiff has not presented affidavits or deposition testimony from either Reeves or Sykes swearing to the statements that Plaintiffs alleges they made. In fact, the evidence supports a finding

that, contrary to Plaintiff's contentions, Heisserer and Kemker worked with Sykes to receive input for her 2018 performance appraisal, and it is undisputed that the input received positively impacted Plaintiff by raising her overall rating. [*See* D ¶¶ 30-32, 39; Doc. 44-5 at 53, 57-59; Doc. 44-4 ¶¶ 9-10; Doc. 45-7 ¶ 39]. Thus, Plaintiff cannot establish a prima facie retaliatory hostile work environment claim based on these incidents because she has not established, with admissible evidence, that these incidents happened at all. *See Babb*, 992 F.3d at 1207; *Malone*, 858 Fed. Appx. at 303 (holding that, to establish a prima facie retaliatory hostile work environment claim, a plaintiff must establish, among other things, that she suffered an adverse action).

Further, even if Plaintiff had established either that Kemker and Heisserer made false statements about her to other NRC officials or that Reeves made improper requests of her, she has not established a causal link between those actions and any activity protected under Title VII. Based on a review of Plaintiff's complaint, she appears to have alleged her filing of the 2018 EEO complaint as the protected activity that Defendant retaliated against her for with respect to these two alleged incidents of harassment. [*See* Doc. 20 ¶¶ 38-39]. But she has submitted no facts or evidence, other than her own assertions, linking the filing or settling of that complaint with Kemker's, Heisserer's, and Reeves's purported actions. *See*

*Cincinnati Ins. Co.*, 806 F.2d at 1544 (providing that contentions based on mere speculation and conjecture are impermissible in the context of motions for summary judgment). By all accounts, Kemker and Heisserer had a difficult working relationship with Plaintiff, but that fact does not equate to a determination that they retaliated against her for filing her 2018 EEO complaint. This is especially so in light of the evidence presented that Heisserer's efforts to rate Plaintiff fairly resulted in an overall higher rating than she would have received without Sykes's input, and Plaintiff has not challenged her overall rating in this action.

Accordingly, the Court concludes that summary judgment for Defendant is warranted as to these portions of Plaintiff's retaliatory hostile work environment claim.

### B. Comments in Plaintiff's 2018 Performance Appraisal

Next, the Court concludes that summary judgment is likewise warranted as to the portions of Plaintiff's retaliatory hostile work environment claim relying on the three challenged comments in her 2018 performance appraisal. Specifically, the undersigned finds that none of the comments meet the second prong of the prima facie standard, i.e., that Plaintiff suffered an adverse employment action that might well have dissuaded a reasonable worker from making or supporting a charge

of discrimination. *See Monoghan*, 955 F.3d at 861-62; *Babb*, 992 F.3d at 1205-08. In fact, the evidence supports a conclusion that the challenged comments were appropriately based on Plaintiff's work performance for fiscal year 2018 and were not demonstrably false.

As to Comment 1—that Plaintiff did not submit her January 2018 inspection report inputs on schedule and that her submissions required revisions—the evidence demonstrates that inspectors were expected to document inspection results within one week of returning to the office. [*See* D ¶¶ 44-47, 55; Doc. 44-10 at 7-8; Doc. 45-7 ¶¶ 44-47, 55]. While Plaintiff argues that the reports were pending test results, the evidence shows that she did not inform Heisserer of that fact until a third email was sent regarding the matter, approximately two months after the inspections were done. [*See* Doc. 45-3 at 6-7]. As Critical Element 3 concerns oral and written communication skills, the evidence shows that any erroneous determination that Plaintiff's inspection reports were late was likely due to Plaintiff's failure to keep her supervisors informed about the status of the reports, and in any event is a business judgment that this Court will not second guess. *See Alvarez*, 610 F.3d at 1266. And although Plaintiff stated that the required revisions were due to a new format being introduced while she was out on leave, she did not

dispute that the revisions were required, undermining her assertions that the comment was false. [*See* D ¶ 42; P ¶ 9; Doc. 45-7 ¶ 42; Doc. 44-6 at 57-58].

Next, as to challenged Comment 2—that Plaintiff's responses to communications from senior officials related to her report inputs were dismissive and uncooperative—Plaintiff did agree during her testimony, as Defendant contends, that this perception was subjective and open to interpretation. [D ¶ 51; P ¶ 14; Doc. 44-6 at 62-66; Doc. 45-7 ¶ 51]. Although Plaintiff contends that the subjective nature of the comment demonstrates that it is a pretext for retaliation, she has not explained how. Additionally, as explained above, Defendant presented evidence that Plaintiff did not respond to Heisserer's emails requesting status updates with a completion estimate or information about the pending test results until Heisserer's third email on the subject, which the undersigned finds to be a legitimate basis for describing Plaintiff's responses as "dismissive and uncooperative." [*See* Doc. 45-3 at 6-7]; *see Meeks*, 15 F.3d at 1019 & n.1 (noting that the employer must merely proffer a legitimate, non-discriminatory reason for its action and that, to survive summary judgment a plaintiff must prove both that the employer's proffered reason is not worthy of credence and that the employer was motived by intentional discrimination). Thus, the evidence does not support

Plaintiff's assertions that Comment 2 was false, and therefore an adverse employment action, either.

And as to challenged Comment 3—that Plaintiff's interactions with coworkers and supervisors at the Vogtle 3 & 4 site were defensive and sometimes contentious—Plaintiff testified that she had adverse reactions with Kemker while stationed at the Vogtle 3 & 4 site, and both Kemker and Plaintiff testified that their working relationship was difficult. [*See* D ¶¶ 6-7, 54; Doc. 44-3 at 9; Doc. 44-6 at 66-67; Doc. 45-7 ¶¶ 7, 54]. While the evidence does support Plaintiff's contention that this comment referenced the 2017 counseling memorandum, in violation of the 2018 EEO settlement, Heisserer testified that she and Kemker relied on other incidents as well in making the comment. [*See* D ¶¶ 58, 64; Doc. 44-1 at 48-49; Doc. 45-7 ¶ 64]. But even construing the reference to the 2017 counseling memorandum in Plaintiff's favor, as the Court must, Plaintiff still cannot establish that Heisserer and Kemker did so out of retaliation, as Defendant presented evidence that the two were not aware that the settlement prohibited them from referencing the incident addressed in that memorandum, and therefore, Heisserer and Kemker could not have done intentionally referenced the memorandum out of retaliation for Plaintiff's 2018 EEO settlement. [*See* D ¶ 57; Doc. 44-1 at 9-10, 42-43, 45-46, 48, 50-51]; *see Four Parcels of Real Prop.*, 941 F.2d at 1437 (holding

that the court must view the evidence in the light most favorable to the non-moving party). Contrary to Plaintiff's contentions, the 2018 EEO settlement did not require Kemker and Heisserer to communicate with her only through Sykes, [*See* P ¶ 1; Doc. 44-1 at 9-13; Doc. 51 ¶ 1], and her reliance on that contention to evidence their knowledge of the settlement is therefore misplaced.

To that end, Plaintiff has not shown a causal link between any of the three comments, false or not, and any protected activity. *See Monoghan*, 955. F.3d at 861-62; *Babb*, 922 F.3d at 1205-08. As explained in Section A., Plaintiff has not presented admissible evidence supporting Reeves's alleged requests, so the denial of those requests cannot serve as the protected activity underlying the alleged retaliation she suffered. And other than the forbidden reference to the 2017 counseling memorandum discussed above, she has presented no evidence supporting a causal link between the three challenged comments and her 2018 EEO complaint beyond her own assertions, which do not suffice. *See Cincinnati Ins. Co.*, 806 F.2d at 1544. Accordingly, the Court concludes that Plaintiff has not demonstrated a prima facie case of retaliatory hostile work environment based on the challenged comments in her performance appraisal, either, and Defendant is entitled to summary judgment on this portion of Plaintiff's claim as well.

## VI. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment, [Doc. 43], is **GRANTED**. The Clerk is **DIRECTED** to enter final judgment in favor of Defendant.

**IT IS SO ORDERED AND DIRECTED**, this 31st day of January, 2022.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE